Dennis SMITH, Employee, George Fenske, d.b.a. Sanitary Service and Great American Insurance Co., Respondents,

v.

FENSKE'S SUBURBAN SANITATION and Western National Mutual Insurance Co., Relators.

No. 47824.

Supreme Court of Minnesota.

June 2, 1978.

Fitch & Johnson, Minneapolis, for relators.

Jardine, Logan & O'Brien and James J. Galman, St. Paul, for respondents.

PER CURIAM.

Fenske Suburban Sanitation (hereafter Fenske No. 1) and its compensation insurer seek review of a decision of the Workers' Compensation Court of Appeals holding that the herniation and protrusion of a cervical disc suffered by employee, Dennis Smith, and his consequent disability were caused by chiropractic manipulation initially undergone by employee for treatment of a low back injury he had sustained on April 14, 1975, arising out of and in the course of his employment with Fenske No. 1. Relators contend that this finding and a finding that employee did not suffer a personal injury in the course of his employment in May 1975 with respondent George Fenske (hereafter Fenske No. 2) are not supported by credible evidence. We hold that the findings are not without sufficient evidentiary support and therefore affirm.

Employee, who is in his early thirties, has been a sanitation worker most of his adult life. His job required him to drive a truck, load, lift, and carry cans or plastic barrels of refuse which might weigh 100 pounds or more and to empty their contents into the back of the truck. He sometimes carried the containers on or over his left shoulder. On April 14, 1975, while in the employ of

Fenske No. 1, employee sustained a low back injury. His pain became worse by the next day and between then and April 30 he had four chiropractic treatments for his low back. Employee testified that on April 21, during one of these treatments, when Dr. C. B. Nelson pushed on his left shoulder he felt something move or snap in the upper part of his shoulder slightly to the left of his spine. He said he felt some pain and told Dr. Nelson about it, to which the chiropractor responded that it was his vertebrae "going into place." When he saw Dr. Nelson again on April 30, he told him he was having trouble with his neck, but he was not treated in that area.

Employee thereafter began working for Fenske No. 2 on May 5. For the rest of the month employee felt increasing pain in his neck, shoulder, and arm, and on May 30 after finishing his route he returned to Dr. Nelson for treatment of these areas. The treatment given made employee feel worse. He said the chiropractor "stretched his neck out," pulled his head toward the doctor's body, and "snapped" it suddenly; he then bent employee's left arm upward so his hand rested on his neck and pulled or "snapped" the arm upward. He worked the next day, but the pain continued to increase and was so intense by Sunday evening that he went to the emergency room at St. Mary's Hospital in Rochester. He went to Mayo Clinic the next day, was examined, and was put in traction during the next week. When this did not help, he was hospitalized and on June 16 an extruded disc at the C6–7 level was removed. Since then, employee has had a steady ache in his neck, shoulder, and down the upper surface of his left arm and into his hand. Relators have not challenged the finding relating to his permanent partial disability.

Three orthopedic surgeons gave opinions, expressed with reasonable medical certainty, on the effect of the chiropractic manipulation performed on April 21, all of which were based on the assumptions that employee had experienced the snap in his neck or shoulder to which he testified and had had pain in his neck from then on which gradually grew more intense. Dr. Robert Wengler said that this manipulation had applied stress to employee's spine which ruptured the C6–7 disc; Dr. Ivan Schloff agreed that the manipulation caused employee's need for surgery and his permanent disability; and Dr. Elmer Salovich expressed the opinion that this manipulation was a substantial contributing factor in his cervical disc problem. Dr. David Piepgras, a Mayo Clinic neurosurgeon, said employee's neck difficulty and cervical disc disease "may in reasonable probability be related to the chiropractic manipulations" and thought employee had extruded the disc fragment on May 30. Dr. Salovich agreed that the extrusion could have been caused by the treatment on May 30.

Assuming that employee had sustained a cervical injury during the April 21 manipulation, the medical witnesses differed on the effect of employee's work for Fenske No. 2 on that injury. Dr. Salovich was of the opinion that employee's work contributed causally to his disability and need for surgery. Dr. Schloff said the work could have temporarily aggravated employee's underlying condition but did not cause his need for surgery. Dr. Piepgras expressed the opinion that employee's symptoms progressed during the weeks he worked for Fenske No. 2 but that he did not sustain a new injury. Dr. Wengler agreed that employee became more symptomatic during this interval but said that it would be "pretty unreasonable to suggest that there was an increase in his impairment by virtue of the activities in that month." Employee himself testified that his neck and shoulder became more painful during the time he worked for Fenske No. 2 but he did not develop pain in other areas of his body.

Based on employee's testimony and the foregoing medical testimony, the compensation judge made findings, subsequently adopted by the court of appeals, that the herniation and protrusion of the cervical disc was caused by the chiropractic treatments initially performed to treat employee's low back injury; that employee did not sustain a new personal injury while working for Fenske No. 2 in May 1975; and that

between May 5, 1975, and May 31, 1975, employee's symptoms in his neck, shoulder, and left arm were manifestations and recurrences of the effects of the injury sustained in the chiropractic treatment during April.

■ The employee's testimony about the occurrence of the snap in his neck or shoulder during the chiropractic manipulation of April 21 was implicitly credited by the court of appeals. The findings accordingly have substantial evidentiary support in his testimony and in the opinions of Drs. Wengler, Schloff, and Piepgras. Liability was properly imposed on Fenske No. 1 for the compensation to which employee is entitled due to disability resulting from both the cervical and low back injuries. See, *Williams v. Holm*, 288 Minn. 371, 181 N.W.2d 107 (1970).

Relators contend, however, that employee's testimony is not credible, pointing to the following evidence:

(1) Dr. Nelson, the chiropractor, testified that when a patient's low back is being adjusted as employee's was, there is no way a stress motion, twisting, or jerking could take place in the upper part of his body. Dr. Nelson also testified that he could not recall employee complaining to him of a popping or of distress in the upper part of his back during his treatments and said he would have recorded a complaint in his notes.

(2) Dr. Salovich testified that in his opinion manipulation of the low back "within reasonable medical probability would not cause a cervical disc." Dr. Salovich conceded, however, that he could not tell from reading Dr. Nelson's deposition how much pressure the latter placed on employee's neck area.

(3) Medical histories taken on June 1 in the emergency room of St. Mary's Hospital, on June 2 at the Mayo Clinic, and on June 10 when employee was admitted to the hospital did not state that employee had sustained cervical injury during chiropractic treatment in April.

■ The court of appeals in its evaluation of the evidence determined that employee was a credible witness and that relators' evidence was insufficient to impeach his testimony. Assessment of a witness' credibility is a function of the court of appeals, and when reviewing findings based on such an assessment this court usually will not substitute its judgment on a witness' credibility for that of the court of appeals. *Meyer v. Abel Signs*, 306 Minn. 55, 236 N.W.2d 774 (1975); *Greene v. W & W Generator*, 302 Minn. 542, 224 N.W.2d 157 (1974); *Dotstry v. Radisson Hotel*, Minn., 266 N.W.2d 716, filed May 26, 1978. We see no reason to do so here.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.